

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN
## 11

GROVER SELLERS
ATTORNEY GENERAL

Honorable A. T. Cole
County Attorney
Donley County
Clarendon, Texas

Dear Sir:                     Opinion No. O-6031

Re: Under the provisions of Article
8, Section 9, Constitution of
Texas, can the Commissioners'
Court continue to transfer monies
from one fund to another without
an election so long as no elec-
tion is requested?

And several other questions.

We acknowledge receipt of your recent request for an
opinion on the above matters, said request reading as follows:

"None of the officials of Donley County have as
yet received a copy of the New Laws passed by the
last Legislature, nor the Constitutional Amendments.
We are therefore in the dark as to just what to do:

"QUESTION 1. Under the new laws passed by the
last Legislature, can the Commissioners' Court con-
tinue to transfer County monies from one fund to
another without an election so long as no election
is requested?  (Art. 8, Section 9 Constitution).
If not, then what is the penalty for a violation
thereof?

"QUESTION 2.  Do the County Commissioners' share
in the raise granted to County Officials by S. B. No.
123, Amending Articles Nos. 3891, 3902 and 3912e of
the Revised Civil Statutes of Texas?

"QUESTION 3.  Can the State gasoline tax money
which was allocated to the counties as a Farm to
Market road fund be used by the Commissioners' Court
to purchase the right-of-way for county roads which
have not been designated or OKed by the Highway De-
partment as a Farm to Market Road?

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

"QUESTION 4. A number of years ago at a special election held for that purpose, the qualified voters of Donley County voted an additional fifteen cent tax on the hundred dollar valuation as a road maintenance fund (Art. 8, Section 9, Constitution) subsequently this tax was omitted from the levy for several years by the Commissioners' Court as being unnecessary. Can this additional fifteen cent tax now be added to the levy without having another Election?"

In response to our request for additional information in regard to Questions 3 and 4, you replied in part as follows:

"In September 1942 Donley County received something over $10,000. as a refund on bonds and warrants, the proceeds of which had been spent for bridges on roads that were afterwards designated as a part of the State highway system and taken over by the State; said refund being placed in the 'Lateral Road Account'.

"Question 3. Can the county commissioners use this money to purchase road machinery for the construction and maintenance of county roads and for the purchase of right-of-way for other county roads?

"In the year 1907, at a special election held for that purpose, the qualified voters of Donley County voted a fifteen cent tax on the One Hundred Dollars valuation as a road maintenance tax, as provided in Art. 8, Section 9, of the Constitution. This tax was levied and collected for about twenty years but for the past ten or twelve years this tax has not been levied, the county tax rate being eighty cents or less.

"Question 4. Can the commissioners court now add this fifteen cent tax, or a portion thereof, to the 1945 levy, making the rate in excess of eighty cents, without first submitting the question of the fifteen cent road maintenance tax to the qualified voters?"

We know of no new law passed by the last Legislature authorizing the commissioners' court to continue to transfer monies from one fund to another without an election so long as no election is requested. Prior to the amendment of Article 8, Section 9, of the Constitution of Texas, which is hereinafter referred to, the

Honorable A. T. Cole, page 3

commissioners' court could not legally transfer any money from one fund to another. See Carroll vs. Williams, 202 S. W. 504, by the Supreme Court, also our opinions Nos. 0-4763, 0-5595, and 0-5422, copies of which are enclosed herewith.

Article 8, Section 9 of the Constitution of Texas was amended at the general election on November 7, 1944. Under this amendment, commissioners' courts are authorized to submit to the voters whether or not the county taxes referred to in said Article and Section of the Constitution, that is, the twenty-five cents for county purposes, fifteen cents for roads and bridges, fifteen cents for jurors, and twenty-five cents for public improvements, or a total of eighty cents, may be changed by increasing or decreasing the same as provided in said amendment. We hand you herewith copies of our opinions Nos. 0-6278 and 0-6427, which construe said amended Article 8, Section 9 of the Constitution of Texas.

The only penalties we know of for a violation of the provisions of the law relative to the transfer of county funds from one fund to another without lawful authority would be a removal from office, or suits on the bonds of the members of the commissioners' court, if justified under the law as set forth in the following:

Article 5970, V. A. C. S., provides in part as follows:

"All district and county attorneys, county judges, commissioners, clerks of the district and county courts and single clerks in counties where one clerk discharges the duties of district and county clerk, county treasurer, sheriff, county surveyor, assessor, collector, constable, cattle and hide inspector, justice of the peace and all county officers now or hereafter existing by authority/either of the Constitution or laws, may be removed from office by the judge of the district court for incompetency, official misconduct or becoming intoxicated by drinking intoxicating liquor, as a beverage, whether on duty or not; . . ."

Article 5972 of said statutes is as follows:

"By 'incompetency' as used herein is meant gross ignorance of official duties, or gross carelessness in the discharge of them; or an officer may be found to be incompetent when, by reason of some serious physical or mental defect, not existing at the time of his election, he has become unfit or

Honorable A. T. Cole, page 4

unable to discharge promptly and properly the duties of his office."

Article 5973 of said statutes is as follows:

"By 'official misconduct,' as used herein with reference to county officers, is meant any unlawful behavior in relation to the duties of his office, wilful in its character, of any officer intrusted in any manner with the administration of justice, or the execution of the laws; and includes any wilful or corrupt failure, refusal or neglect of an officer to perform any duty enjoined on him by law."

See also the following decisions: State vs. O'Meara, 74 S. W. (2d) 146; State vs. Jordan, 28 S. W. (2d) 921, writ dismissed; and Cornutt vs. State, 55 S. W. (2d) 160, writ dismissed.

It is possible for the members of the commissioners' courts to be liable on their bonds, and the rules of law governing such causes of action are fully set forth in our opinion No. O-4715, a copy of which is enclosed herewith.

The county commissioners do not share the raise granted county officials by Senate Bill No. 123, amending Articles 3891, 3902, and 3912e of the Revised Civil Statutes of Texas. We hand you herewith copies of our opinions Nos. O-6666 and O-6588, which so hold. Said opinion No. O-6666 also deals with House Bill No. 84, which amends Article 2350 and provides for an increase in the salaries of county commissioners. We hand you herewith our opinion No. O-6622, which also construes House Bill No. 84.

In connection with such salary increases, however, your attention is directed to the fact, as set forth in said opinion No. O-6666, that the county budget must be amended before such increases, or any of them, can be granted. We also hand you herewith copies of the opinions therein referred to dealing with the amendment of the county budget, to wit, Nos. O-5184 and O-5053-A.

Article 6674q-2 of Vernon's Annotated Civil Statutes is in part as follows:

"All roads which prior to January 2, 1941, had not become a part of the system of State Designated Highways, for convenience in this Act are called 'lateral roads'."

Honorable A. T. Cole, page 5

In our opinion No. 0-3606, a definition of "lateral roads" similar to that above set out was being considered and the following holding, which we here adopt, was made:

"It is our opinion that the lateral roads to which the Act refers can be nothing more than such roads as constitute a part of the county road system as contradistinguished from the State Highway System; therefore, we think the funds allocated to the counties for the use on lateral roads under the provisions of this Act would be restricted to the use on roads constituting a part of the county system and over which the county commissioners' court has jurisdiction."

Article 6674q-7, subdivision (h) of said statute, reads, in part, as follows:

"On September 1st of each year after the Board has paid off and discharged all eligible obligations maturing during the preceding fiscal year, together with the interest on such obligations and the sinking fund requirements accruing thereon out of the County and Road District Highway Fund, any surplus remaining in said fund over and above Three Million ($3,000,000.00) Dollars shall be set aside and credited by the State Treasurer to the respective funds hereinafter named as follows: one-half(1/2) of said surplus shall be transferred to the State Highway Fund, and one-half (1/2) shall be credited to an account to be known as the 'Lateral Road Account' to be distributed and expended as hereinafter provided.

"As soon as practicable after the passage of this Act and before the Lateral Road Account is allocated to the counties, the Board shall determine the amount each county and each defined road district has paid since January 1, 1933, under the provisions of Chapter 13, Acts of the Third Called Session of the 42nd Legislature, as amended, toward its debt service upon bonds which at the time of payment were eligible to participate in the County and Road District Highway Fund, and shall deduct from the amount paid by such county or defined road district any and all advancements made by the Board to such county or defined road district in adjusting, refunding, or prepaying the eligible obligations of such county or defined road district, and after making such deductions, the Board shall credit the Lateral Road Account of each county or defined road district with the net balance contributed by such county or road district toward the retirement of said eligible

Honorable A. T. Cole, Page 6

obligations, and said funds so credited to any
county or defined road district may be used or
expended by the counties and defined road districts
for the purposes authorized in this Section.

". . . .

"The moneys allocated to each county from
the Lateral Road Account shall be used by said county
first for paying the principal, interest, and sinking
fund requirements maturing during the fiscal year for
which such money was allocated to such county on bonds,
warrants, and other legal obligations issued prior to
January 2, 1939, the proceeds of which were actually
expended in acquiring right-of-ways for State Desig-
nated Highways, it being the intention of the Legisla-
ture to designate and set apart sufficient money to
pay off and discharge said outstanding obligations
incurred for right-of-way acquisition. The Board
shall require from each county a sworn statement of
the outstanding right-of-way indebtedness incurred
on State Designated Highways, and in the event a false
statement is furnished the Board by any county, or
where any county fails or refuses to file a report,
then such county shall be denied any benefits under
this Section; it being the duty of the Board before
distributing any funds to any county under this Section
where such county submits a report that it has no right-
of-way indebtedness, or where said report is vague or
indefinite, to audit and determine the correctness of
such report. Funds remaining in the Lateral Road Fund
of any county, after the payment of said right-of-way
obligations, shall be used by the county for paying the
maturing principal, interest, and sinking fund require-
ments, due by the county in that fiscal year on bonds,
warrants, or other evidences of indebtedness which were
legally issued by such county or road districts prior
to January 2, 1939, the proceeds of which were actually
expended in the construction or improvement of lateral
county roads. Payment to be made ratably upon the
principal and interest on the maturing road bond ob-
ligations of said county for such fiscal years. Any
funds remaining in the Lateral Road Fund of any county
after the payment of said principal, interest, and
sinking fund requirements due or maturing in that fis-
cal year on bonds or warrants which were legally issued

by such county or road district prior to January 2, 1939, the proceeds of which were actually expended in the construction or improvement of lateral county roads, may be used by the county under direction of the Commissioners Court for any one or all of the following purposes:  (a) for the acquisition of right-of-ways for county lateral roads and for the payment of legal obligations incurred therefor prior to January 2, 1939;  (b)  for the construction or improvement of county lateral roads;  (c) for the purpose of supplementing funds appropriated by the United States Government for Works Progress Administration highway construction, and such other grants of Federal Funds as may be made available to the counties of this state for county lateral road construction;  and (d) for the purposes of cooperating with the State Highway Department and the Federal Government in the construction of farm-to-market roads.  Provided that when such funds are used for the construction or improvement of county lateral roads, such construction or improvement shall be made under the supervision of a competent engineer.

"After such allocation has been made to the several counties in the state the Board shall in writing notify the Chairman of the Commissioners Court of each county of the amount which has been credited to that county.  After receiving said notice, the Commissioners Court shall, within sixty (60) days, notify the Board of the manner in which it has exercised its option as to the one or more specified uses of said money permitted under this Act.

"Such money shall be applied pro-rata to the payment of the debt service requirements of all issues of lateral road indebtedness of the county and all included defined road districts, in the proportion that the debt service requirements of each issue bears to the aggregate debt service requirements of all issues for that year.  When any issue of obligations which will receive aid under this Section is already listed with the Board of County and District Road Indebtedness, the Board shall credit the amount applicable to said issue to the account of said issue in the State Treasury.  As to all other issues of obligations, which will receive aid under this subsection (h), the Commissioners Court

of the specific counties affected shall have the right, if so desired, to utilize the facilities of the State Board of County and District Road Indebtedness in paying the amounts of principal and interest on said issues substantially in the manner that payments are effected as to such eligible obligations.

"In the event that the funds so received by the county from the Lateral Road Account are in excess of the amount required to meet the principal and interest of its maturing road bond obligations for the next fiscal year, the Commissioners Court may elect to use such excess money allocated to it from the Lateral Road Account, and in such event, it shall notify, in writing, the said Board, of its election to make use of said money. Whereupon, said Board shall remit said balance to be utilized for such purpose to the County Treasurer of such county, said money to be deposited by the County Treasurer in accordance with law, and the same shall be utilized by the county, acting through the Commissioners Court, for the construction of lateral roads. Each county may call upon the State Highway Commission to furnish adequate technical and engineering supervision in making surveys, preparing plans and specifications, preparing project proposals and supervising actual construction. The actual cost of such aid in supervision shall be paid by the county as a charge against its project."

Article 6674q-8c, of said statute, reads as follows:

"It shall be unlawful for any County Judge or any County Commissioner, while acting in his/official capacity or otherwise, to use any money out of the Lateral Road Account for any purpose except the purposes enumerated in this Act. If any County Judge or any County Commissioner shall knowingly expend or use, or vote for the use of, or agree to expend or use any sum of money accruing to any county in this state from the Lateral Road Account, for any purpose not authorized by this Act, or shall knowingly make any false statement concerning the expenditure of any such money, he shall be deemed guilty of a felony, and upon conviction shall be punished by confinement in the State Penitentiary for not less than two (2) years nor more than five (5) years."

Honorable A. T. Cole, page 9

Our opinion No. O-3537 contains the following holding, which we here adopt:

"'May Hutchinson County legally expend moneys derived through said H. B. 688, now held in its Lateral Road Fund for (a) removing the old floor of a bridge, purchasing materials for a new floor, and constructing a new floor in this bridge; and (b) for materials and labor in making repairs to such bridge in addition to a new floor?'

"We advise as follows:

"In the early case of Aransas County v. Coleman-Fulton Pasture Company, 191 S. W. 553, it was held that the Constitution, Article 3, Section 52, as amended in 1903, authorizing counties to issue bonds for road construction purposes, empowered such counties to build necessary bridges as a part of such road, and it has become settled law that bridges are an essential part of any road. Therefore, it is our opinion that the funds allocated to the county through the Lateral Road Account of the Board of County and District Road Indebtedness are available for the purposes enumerated in your question.

"Following the same line of reasoning, we think the county would be fully authorized to use such moneys for the purpose of acquiring right-of-way to roads forming a part of the County Lateral Road System."

We also here adopt the following from our opinion No. O-2778:

"Art. 6741, Vernon's Annotated Civil Statutes, provides:

"'The commissioners court may make and enforce all reasonable and necessary rules and orders for the working and repairing of public roads, and to utilize the labor to be used and money expended thereon, not in conflict with the laws of this State. Said court may purchase or hire all necessary road machinery, tools or teams, and hire such labor as may be needed in addition to the labor required of citizens to build or repair the roads.'

Honorable A. T. Cole, page 10

"We quote from Tex. Jur., Vol. 21, p. 630, as follows:

"'Subject to any local law, commissioners' courts are invested with the power and charged with the duty of creating and maintaining adequate roads. They are commanded to lay out and establish roads when necessary. These words mean "make, create or found permanently" -- that is to say, they are empowered to do all such acts as may be necessary to construct permanent roads. They are further directed to "exercise general control over all roads, highways, ferries and bridges in their counties." Accordingly, where a statute applicable to highways merely empowers commissioners' courts to exercise their powers in a particular way, it will be construed as being subordinate to the general power of control, and not mandatory. Similarly, the doctrine of implied powers enables commissioners' courts to do all that is necessarily incidental to their declared powers of road improvement and regulation. The limits of their powers, however, are reached when they exceed what may fairly be implied.

"'Just as in matters involving the establishment of a highway, the administrative powers of commissioners' courts are exercisable according to their discretion with which the courts refrain from interfering except upon a clear showing of abuse. * * *'

"Lasater v. Lopez, 202 S. W. 1039, affirmed 217 S. W. 373.

"It will be noted that paragraph H. of Art. 6674q-7, supra, specifically provides that the moneys allocated to each county from the lateral road account shall be used by said county first for paying the principal, interest and sinking fund requirements maturing during the fiscal year for which such money was allocated to such county on bonds, warrants, and other legal obligations issued prior to January 2, 1939. As stated in the statute, it was the intention of the Legislature to designate and set apart sufficient money to pay off and discharge said outstanding obligations incurred for right-of-way acquisition. It is further provided that funds remaining in the lateral road fund of any county after the payment of said right-of-way obligation may

be used by the county, under the direction of the commissioners' court for any one or all of the purposes as set out in the statute. Two of the purposes for which the remaining fund may be expended as provided in the statute is for the acquisition of rights-of-way for county lateral roads and for the payment of legal obligations incurred therefor prior to January 2, 1939, and for the construction or improvement of county lateral roads.

"When the commissioners' court of a county elects to use the money allocated to it from the lateral road account for the construction or improvement of county lateral roads, it is our opinion that the court may exercise all implied powers that is necessarily incidental to their declared power of constructing or improving of county lateral roads. Therefore, you are respectfully advised that it is the opinion of this department that the commissioners' court may use the funds remaining in the lateral road fund of a county to purchase road machinery for the maintenance of lateral roads when such machinery is necessary for the maintenance, construction or improvement of the county lateral roads."

It is our opinion, therefore, that your question No. 3 should be, and it is hereby, answered in the affirmative.

Article 8, Section 9 of the Constitution of Texas authorizes the Commissioners' Court to levy various taxes based upon the One Hundred Dollars valuation, to wit, not more than 25¢ for county purposes, not exceeding 15¢ for roads and bridges, not exceeding 15¢ to pay jurors, and not exceeding 25¢ for public improvements, making a total of not more than 80¢ for such purposes. Said Article and Section further provide that the Legislature may authorize an additional amount of ad valorem taxes to be levied and collected for the further maintenance of the public roads, provided, that a majority of the qualified acting voters of the county voting at an election to be held for that purpose shall vote such tax, not to exceed 15¢ on the One Hundred Dollars valuation of the property subject to taxation in such county.

Article 2352, V. A. C. S. authorizes each and all of the taxes above referred to which go to make up the total of 80¢

Honorable A. T. Cole, page 12

on the One Hundred Dollars valuation, as above set out. In addition, it contains the following provisions:

"They may levy an additional tax for road purposes not to exceed 15¢ on the One Hundred Dollars valuation of property subject to taxation, under the limitations and in the manner provided for in Article 8, Section 9 of the Constitution and in pursuance of the laws relating thereto."

It is evidently this additional 15¢ that was approved by the voters of Donley County in 1907. The fact that the Commissioners' Court had not levied or collected this tax for the past ten or twelve years does not, in our opinion, affect its validity or prevent said Court from now levying and collecting said tax for the current and ensuing years. We do not think said Court would be authorized to levy and collect such tax for past years; therefore, your fourth question is answered in the affirmative.

In connection with our answer to Question No. 1, and in further clarification of the rules of law governing the handling of said funds after they have been re-allocated as provided for in Article 8, Section 9 of the Constitution of Texas, as amended, you are advised as follows:

When a county votes to re-allocate its tax rate within the 80¢ limit, it is still inhibited from transferring money from any one of the four constitutional funds, that is, General Fund, Road and Bridges Fund, Jury Fund and Permanent Improvement Fund, as so re-allocated, to any other fund. Likewise, the money collected under the special 15¢ tax for roads and bridges may not be transferred to any other fund. In other words, when a tax is levied for a particular purpose, it may not be diverted or used for another purpose.

Trusting that this satisfactorily answers your inquiry, we remain,

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By *Jas. W. Bassett*
Jas. W. Bassett
Assistant

APPROVED JUL 24, 1945
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY *BWB*
CHAIRMAN

JWB/JCP
Enclosure-11